SHAIKH vs. PATEL, SBQ 17-41645 08-001

































 
 SADIQ SHAIKH, Plaintiff, v. RAKESH N. PATEL, et al., Defendants
 SBQ 17-41645 08-001 
 JUNE 7, 2021
MIDDLESEX, ss.
VHAY, J.
DECISION ON SUFFICIENCY OF SERVICE OF CITATIONS BY REGISTERED MAIL DURING COVID PANDEMIC














 On May 17, 2021, this Court ordered plaintiff Sadiq Shaikh to provide additional proof of his efforts to serve certain "parties in interest" in this case, brought under G.L. c. 185, § 114. This decision explains in greater detail the reasons for that order. 





 Certificate of Title No. 180357, issued by the Middlesex South Registry District, is in the name of Mr. Shaikh. The Certificate says he's the owner of Lots 1 and 2 on Land Court Plan No. 41645-A (the "Plan"), depicting numerous properties in Woburn, Massachusetts. Lots 1 and 2 are known as 12 Naples Avenue. This Court approved the Plan in 1982. 





 The Plan shows Lots 1 and 2 straddling Virginia Avenue, a road that's never been built. In August 2017, Mr. Shaikh petitioned this Court under c. 185, § 114, for an order declaring that he owns in fee simple absolute all of Virginia Avenue as it lies between Lots 1 and 2 (the "Paper Street"), and a further declaration that no one else has rights in the Paper Street. He also asked the Court to amend Certificate of Title No. 180357 to reflect those declarations.





 In March 2018, the Court appointed an outside title examiner to determine who should receive notice of Mr. Shaikh's petition. Following the examiner's report, in 2019, seventeen defendants, the owners and mortgagees of properties near 12 Naples Avenue (the "Original Defendants"), received notice (a "citation") of this action. After additional proceedings, the Court concluded in December 2019 that many other owners and mortgagees deserved notice. Shaikh and the examiner finished identifying those persons and entities in early December 2020. The Court ordered Shaikh to serve them too with a citation, by registered mail. 





 Why registered mail? Because the applicable statutes suggest it's a sure means of providing notice. The first such statute is c. 185, § 114, the statute under which Mr. Shaikh filed his petition. It provides that once a certificate of title issues for a property, 





 [n]o erasure, alteration or amendment shall be made upon the registration book . . . , except by order of the court. A registered owner . . . may apply by motion to the court upon the ground that registered interests of any description . . . have terminated and ceased; or that new interests not appearing upon the certificate have arisen or been created; . . . or upon any other reasonable ground; and the court may hear and determine the motion after notice to all parties in interest . . . . 





(Emphasis added.) The second statute is G.L. c. 185, § 116. It provides (emphasis added): 





 All notices required by . . . this chapter by the recorder or any assistant recorder, after original registration, shall be mailed to the person to be notified at the residence and post office address stated in the certificate of title, or in any registered instrument under which he claims an interest, in the office of the recorder or assistant recorder, relating to the parcel of land in question. All notices and citations directed by special order of the court under this chapter, after original registration, may be served in the manner above stated, and the certificate of the recorder shall be conclusive proof of such service; but the court may in any case order different or further service, by publication or otherwise. 





 One could argue that § 116 allows this Court to provide notice under § 114 to "all parties in interest" merely by first-class mail (or by "different or further service, by publication or otherwise"). But requiring notice by registered mail (or certified mail, see G.L. c. 4, § 7, cl. 44 (in construing Massachusetts statutes, "unless a contrary intention clearly appears," the term "'Registered mail,' when used with reference to the sending of notice . . . shall include certified mail")) accomplishes two things. First, when § 116 talks of serving "notices and citations directed by special order of the court . . . in the manner above stated," it's describing notices and citations sent by the Recorder or an Assistant Recorder. Traditionally in § 114 cases (known among practitioners as "S cases" or "S petitions"), the Court requires the petitioner to arrange for service of the notice. (In other words, in most S cases, the Court orders "different" service, instead of notice by the Recorder or Assistant Recorder.) Reading § 116 as a whole, it appears that the legislature didn't intend for S petitioners to serve parties in interest merely by first-class mail. 





 The second thing service by registered mail accomplishes is consistency with another part of G.L. c. 185, its § 39. Section 39 establishes the notice requirements for original land registration cases. It provides (emphases added): 





 The court shall also, within seven days after publication of [the] notice [described in c. 185, § 38], cause a copy thereof to be sent by the recorder by mailing a registered letter to every person named therein whose address is known. The court shall also cause a duly attested copy of the notice to be posted in a conspicuous place on each parcel of land included in the complaint, by a sheriff or deputy sheriff, fourteen days at least before the return day thereof . . . . If the plaintiff requests to have the line of a public way determined, the court shall order notice to be given by the recorder, by mailing a registered letter to the mayor of the city or to one of the selectmen of the town or towns where the land lies, or, if the way is a highway, to one of the county commissioners of the county or counties where the land lies. If the land borders on a river, navigable stream or shore, or on an arm of the sea where a river or harbor line has been established, or on a great pond, or if it otherwise appears from the complaint or the proceedings that the commonwealth may have a claim adverse to that of the plaintiff, notice shall be given in the same manner to the attorney general. The court may also cause other or further notice of the complaint to be given. The court shall, so far as it considers it possible, require proof of actual notice to all adjoining owners and to all persons who appear to have any interest in or claim to the land included in the complaint. Notice to such persons by mail shall be by registered letter. The certificate of the recorder that he has served the notice as directed by the court, by publishing or mailing, shall be filed in the case before the return day, and shall be conclusive proof of such service.





Section 39's express and repeated reliance on notice by "registered letter" suggests that the legislature considers registered mail to be a sure means of providing notice under § 116. 





 Mr. Shaikh thus proceeded in December 2020 to send citations to the new defendants by registered mail, using the U.S. Postal Service ("USPS"). The General Court adopted in 1898 the provisions of c. 185 that this Order discusses. See St. 1898, c. 562, § 108 (today's c.185, § 114); St. 1898, c. 562, § 109 (today's c. 185, § 116); St. 1898, c. 562, § 32 (today's c. 185, § 39). The Court construes c. 185's requirements that parties use registered letters or the mails to refer to delivery by today's USPS. That's because in 1898, the only provider of mail service in the United States was the U.S. Post Office (renamed USPS in 1971). See https://about.usps.com/who-we-are/postal-history/significant-dates.htm. [Note 1] Today's principal competitors of USPS for delivering physical mail (as opposed to electronic mail) didn't exist in 1898. See https://www.ups.com/cy/en/about/history.page#0 (United Parcel Service ("UPS") founded in 1907); https://www.fedex.com/en-us/about/history.html (Federal Express founded in 1973). [Note 2] 





 The Mailing Standards of the United States Postal Service Domestic Mail Manual (the "DMM"), a regularly updated USPS regulatory document, describes USPS's registered- and certified-mail services. Prior to the coronavirus pandemic, [Note 3] registered-mail service had two components that are important to this case: rigorous delivery standards and a means of obtaining a receipt from the addressee. As to delivery, registered mail is "the most secure service that the USPS offers. It incorporates a system of receipts to monitor the movement of the mail from the point of acceptance to delivery." DMM 503.2.1.1. [Note 4] USPS tracks the movement of registered mail using a label that the customer must attached to the mailpiece. DMM 503.2.1.2. [Note 5] The mail "must bear the complete names and addresses of both sender and addressee." DMM 503.2.3.1. [Note 6] The sender must securely seal the mailing; "USPS employees are not permitted to help customers prepare or seal mail to be registered." DMM 503.2.3.3. [Note 7] 





 Registered mail's second important component is a receipt from the addressee. Registered-mail service includes such a receipt; a certified-mail customer, by contrast, must opt and pay additional for one. See DMM 503.2.1.1 (registered mail); 503.3.1.1 (certified mail). "A mailer purchasing a return receipt may choose to receive the return receipt by mail (Form 3811) or electronically (by email, or by signature extract file format under [DMM 503.]1.8)." DMM 503.6.1.1. Form 3811 is known as a "green card," in recognition of the color of the stock on which USPS for years has printed what's now Form 3811. [Note 8] The Land Court traditionally has required the Recorder and others to file green cards as proof of delivery of notice by registered or certified mail. [Note 9] 





 Modern green cards have a unique barcode. USPS requires that barcode "be electronically linked to the separate barcode for the host extra service," meaning the barcode used to track the registered or certified mailpiece itself. DMM 503.6.1.1. Mail bearing Form 3811 "must be endorsed 'Return Receipt Requested' above the delivery address and to the right of the return address. No endorsement is required on mail for which electronic return receipt service is requested." DMM 503.6.1.3. Customers requesting return-receipt service using Form 3811 





 must complete the mailer's entries on the form, including the article identification number; and attach the form on the article. The mailpiece must bear the return address of either the mailer or mailer's agent. The name and address of the person or organization to which the return receipt is to be returned must be that of the mailer or the mailer's agent. . . . 





DMM 503.6.2. 





 Once a customer gives USPS a registered or certified letter, USPS will attempt to deliver it. "Unless otherwise directed, an addressee's mail may be delivered to an employee, to a competent member of the addressee's family, or to any person authorized to represent the addressee. A person or several persons may designate another to receive their mail." DMM 508.1.4.1. "[M]ail addressed to a governmental or nongovernmental organization or to an individual by name or title at the address of the organization is delivered to the organization, as is similarly addressed mail for former officials, employees, contractors, agents, etc." DMM 508.1.5.1. [Note 10] 





 Unless the addressee has previously provided USPS with an electronic signature, registered or certified mail "may not be opened or given to the recipient before the recipient signs and legibly prints his or her name on the delivery receipt (and return receipt, if applicable) and returns the receipt(s) to the USPS employee." DMM 508.1.1.7.b. [Note 11] One can imagine this exchange occurring at the addressee's premises, with a USPS employee handing the customer a pen to help the customer sign the Form 3811. If the sender has selected receipt by Form 3811, the USPS employee who delivered the letter detaches the now-signed Form 3811 from the letter and returns to the sender the signed Form. See DMM 503.1.8.c. [Note 12] Customers who don't receive a green card may obtain a formal delivery record from USPS. See DMM 503.6.3. 





 By December 2020, when Mr. Shaikh began sending his registered letters, the coronavirus pandemic had caused many to question the safety of hand-delivering letters, lending one's pen to stranger, detaching green cards from letters, and handing cards back to a postal carrier. Thus, while Shaikh has filed several green cards that bear what appear to be the addressee's signature, many cards don't (the "Questioned Cards"). On eight cards, someone has written "Covid," "C-19," or similar things on the part of the card that's set aside for an addressee to sign or initial (the "C-19 Cards"). A post office has stamped another of the Questioned Cards with a date, and nothing else. Ten other cards are blank. But all of the cards bear USPS barcodes and tracking numbers. 





 The Court ordered Mr. Shaikh to show that the Questioned Cards provide sufficient proof under § 116 of service of notice on the persons or entities identified on those cards. Shaikh first contends, and the Court agrees, that § 116 does not require a person who receives notice by registered mail of an S Case to return a green card. (Neither does § 39, for that matter: "The certificate of the recorder that he has served the notice as directed by the court, by publishing or mailing, . . . shall be conclusive proof of such service.") Instead, the principal aim of statutes or rules such as § 116 is the providing of notice to interested persons. [Note 13] While use of registered or certified mail also facilitates proof of such service, see Town of Andover, 432 Mass. at 575 (registered mail); Police Com'r of Boston v. Robinson, 47 Mass. App. Ct. 767 , 773 (1999) (certified mail), in the end it's delivery of the notice that matters. See Town of Andover, 432 Mass. at 575; Hull, 33 Mass. App. Ct. at 22. Even under provisions such as Rule 4(f), Mass. R. Civ. P., which requires a party who claims to have achieved service by mail to file "a receipt signed by the addressee," a party may file in lieu of that receipt "such other evidence of personal delivery to the addressee as may be satisfactory to the court." (Emphasis added.) Rule 4(f) reflects the principle that the act of service is distinct from the act of proving that service. See Roy v. Roy, 47 Mass. App. Ct. 921 , 922 (1999) (rescript; emphasis in original) ("A failure of proof of service does not necessarily mean that the service itself was invalid. . . ."). 





 The next question is whether Mr. Shaikh has provided sufficient proof of delivery of the letters sent with the Questioned Cards. It appears that in March 2020, in response to the coronavirus outbreak, USPS stopped requiring its carriers to obtain addressee signatures on registered mail. A USPS bulletin describes the change: 





 One significant [social distancing] measure being implemented [in the wake of COVID-19] is a temporary modification to mail handling procedures for mail that requires customer signatures. We recognize the close proximity and additional handling that occurs when employees must ask customers for a signature . . . when required. To reduce health risks, we are temporarily modifying customer signature capture procedures. Effective immediately and until further notice, our employees will follow the temporary process below for signature service items. This process applies to all letter carriers: 





 - Avoid ringing the doorbell when possible. Knock on the customer's door. Avoid areas that may be frequently touched when knocking. 





 - While maintaining a safe, appropriate distance, employees will request the customer's first initial and last name. 





 - For increased safety, employees will ask the customer to step back a safe distance or close the screen door/door so that they may leave the item in the mail receptacle or appropriate location by the customer door. 





 - If there is no response, employees will follow the normal Notice Left process. . . . 





USPS, COVID-19 Continuity of Operations Update, available at https://postalpro.usps.com/node/7849. [Note 14] This policy explains why USPS might not have obtained an addressee's acknowledgment of receipt of Mr. Shaikh's notice, despite completing delivery. But the policy doesn't require a carrier who delivers a registered or certified letter in accordance with USPS's "Covid" procedures, and who decides not to obtain the addressee's signature, to write something like "Covid" or "C-19" on the green card. USPS also has not amended the DMM to reflect the policy. See generally USPS, Mailing Standards of the United States Postal Service, Domestic Mail Manual 503, 508 (Apr. 5, 2021) (available at https://pe.usps.com/cpim/ftp/manuals/dmm300/full/MailingStandards.pdf); see also Giles v. U.S. Dept. of Agriculture Rural Dev't, 2021 WL 1299201, *2 (S.D. Ala. Apr. 7, 2021) (rejecting certified-mail returns with "Covid 10," "JM CV 19," and "TC 206 Cov 19" markings as proof of service under Rule 4(i)(1)(A)(i)-(ii), Fed. R. Civ. P.). This Court thus will not accept green cards like the C-19 Cards, standing alone, as proof of delivery of a registered or certified mailing to a defendant in an S Case. 





 All's not lost for Mr. Shaikh, however. Each of the Questioned Cards (including the C 19 Cards) bears a USPS tracking number. In October 2020, USPS published on its website (https://faq.usps.com/s/article/USPS-Coronavirus-Updates-for-Business-Customers [Note 15]) answers to "frequently asked questions." The questions and answers include this one (bold in original; italics added): 





 What is the legality when USPS Letter Carriers enter initials on their electronic device[ [Note 16]] for package Certified/Electronic return receipt? 





 In light of the exigent circumstances created by the Coronavirus pandemic, the Postal Service determined it was necessary to change the signature requirements associated with the delivery of accountable mail[ [Note 17]] . . . in order to follow the guidance of the CDC on social distancing in order to reduce opportunities for possible transmission of COVID-19. It should be understood that our carriers are not signing for customers, but instead indicating that they have identified the customer to whom the item is being delivered. The new practice is deemed to fit within the requirements set forth in the [DMM]. 





 In light of USPS's statement that it is using its electronic receipt-tracking system to indicate that a USPS carrier has "identified the customer to whom the item is being delivered," the Court holds that, as long as the USPS policy described above lasts, a party in an S Case who receives from USPS a detached green card that the addressee has not signed nevertheless may prove delivery of the letter by filing (a) the green card for the letter and (b) a printout from the USPS package-tracking website showing that USPS delivered the letter bearing the green card's tracking number to the intended address on a particular date and time. One without the other fails to establish delivery. [Note 18] 





 Prior to the Court's May 17, 2021 order, Mr. Shaikh already had submitted the Questioned Cards. The Court thus ordered him to submit the required tracking data. The Court awaits Shaikh's further submissions. 





FOOTNOTES
[Note 1] Of course, even now, one can deliver letters in other ways, but they don't count as the mails. See ELVIS PRESLEY, RETURN TO SENDER (Radio Recorders 1962) ("This time I'm gonna take it myself/And put it right in her hand/And if it comes back the very next day/Then I'll understand the writing on it/Return to sender, address unknown/No such person, no such zone."); THE POLICE, MESSAGE IN A BOTTLE (A & M 1979) ("I'll send an SOS to the world/I hope that someone gets my/message in a bottle, yeah"); ROBERT PLANT AND JIMMY PAGE, PLEASE READ THE LETTER (Atlantic 1998) ("Caught out running with just a little too much to hide/Maybe baby everything's gonna turn out fine/Please read the letter I nailed it to your door/It's crazy how it all turned out we needed so much more."); SARA EVANS, SUDS IN THE BUCKET (RCA Nashville 2004) ("She stuck a note on the screen door 'sorry but I got to go'/and that was all she wrote."); TAYLOR SWIFT, TIM MCGRAW (Big Machine 2006) ("There's a letter on your doorstep, and the first thin g that you read/is 'When you think Tim McGraw/I hope you think my favorite song.'"). 

[Note 2] The General Court adopted in 1955 c.4, § 7, cl. 44's language making certified mail the equivalent of registered mail. See St.1955, c. 683. The Court has found no evidence that UPS was providing certified mail service in 1955. 

[Note 3] The following discussion is based on the January 2020 version of the DMM, available at https://pe.usps.com/Archive/NHTML/DMMArchive20200126/welcome.htm. 

[Note 4] By contrast, certified mail "is dispatched and handled in transit as ordinary mail." DMM 503.3.1.1. 

[Note 5] Certified mail uses a different label. See DMM 503.3.2.1. 

[Note 6] There's no comparable standard for certified mail. 

[Note 7] There's no comparable standard for certified mail. Registered mail also must conform to certain physical specifications. See DMM 503.2.1.1. Those specifications prevent one from doing what's described in Woody Guthrie's MAIL MYSELF TO YOU (Ludlow Music Inc. 1962): "I'm a-gonna wrap myself in paper/I'm gonna daub myself with glue/Stick some stamps on top of my head/I'm gonna mail myself to you." 

[Note 8] USPS's current specifications for Form 3811, including the Form's precise shade of green, are found in USPS Publication 199: Intelligent Mail Package Barcode (IMpb) Implementation Guide for: Confirmation Services and Electronic Verification System (eVS) Mailers, 103-104 (Jan. 5, 2021). 

[Note 9] USPS also offers electronic return receipts. They are "an official United States Postal Service® document designed to be equivalent to the hardcopy Return Receipt that has been in use for many years." "As with Return Receipt service, the electronic option provides a mailer with evidence of delivery (to whom the mail was delivered and date of delivery), along with information about the recipient's actual delivery address." USPS, What is Electronic Return Receipt? (Mar. 18, 2021), available at https://faq.usps.com/s/article/What-is-Electronic-Return Receipt. 

[Note 10] If USPS is unable to deliver a registered letter (see DMM 508.1.1.7.f), or if the addressee refuses it before delivery (see DMM 508.1.1), it's "Return to sender/Return to sender/Return to sender/Return to sender." ELVIS PRESLEY, RETURN TO SENDER. 

[Note 11] Some addressees may use an approved hand stamp for this purpose. See DMM 508.1.1.7.g. 

[Note 12] Customers also may obtain delivery information "at www.usps.com or by calling 1-800-222-1811. A proof of delivery letter (including a signature, when available) may be provided by email. When a proof of delivery letter includes a signature, the signature provided may be a signature that was obtained from the recipient at the time of delivery, or, for certain services, an electronic signature that was previously provided by the addressee (or representative) and is maintained on file with the Postal Service. Eligible mailers may require at the time of mailing that a signature be obtained from the recipient at the time of delivery." DMM 503.1.8. 

[Note 13] See Town of Andover v. State Fin. Servs., 432 Mass. 571 , 575 (2000) (construing G.L. c.60, § 66's requirement of notice by certified mail); Hull v. Attleboro Sav. Bank, 33 Mass. App. Ct. 18 , 25 (1992) (construing G.L. c.244, § 14's requirement of notice by registered mail); Carmel Credit Union v. Bondeson, 55 Mass. App. Ct. 557 , 559-560 (2002) (construing same requirement under G.L. c.244, § 17B). This standard is more rigorous than that under G.L. c.40A, §§ 15 and 17, which require only the "mailing" or "sending" of notices, but not proof of delivery. See Zuckerman v. Zoning Bd. of Appeals of Greenfield, 394 Mass. 663 , 669 (1985) (construing c.40A, § 15); Fifeld v. Board of Zoning Appeal of Cambridge, 450 Mass. 1001 , 1002 (2007) (rescript) (construing c.40A, § 17). 

[Note 14] See also https://faq.usps.com/s/article/USPS-Coronavirus-Updates-for-Business-Customers (setting forth same description of signature-receipt procedures). 

[Note 15] As of May 14, 2021, this website identified all updates since the time USPS first posted the information in October 2020. As of May 14, 2021, the website did not list any updates to the USPS policies discussed in this Order. 

[Note 16] USPS personnel use scanners to obtain customer signatures for delivered registered and certified mail. See USPS Handbook PO-610, Signature Capture and Electronic Record Management: Manager's Guide to Standard Operating Procedures, 9-10 (Nov. 2014) (available at https://www.nalc.org/workplace-issues/resources/manuals/PO 610-November-2014.pdf). 

[Note 17] The term "accountable mail" includes registered mail and certified mail. See USPS, Publication 32-- Glossary of Postal Terms (July 2013) (available at https://about.usps.com/publications/pub32/pub32_terms.htm). 

[Note 18] See In re Coudert Brothers LLP, 2020 WL 373838, *3 (S.D.N.Y. Jan. 23, 2020) (Postal Service tracking information showing delivery, without a return slip, is insufficient to prove under Rule 4(l)(3), Fed. R. Civ. P., delivery of notice); Prime Ins. Co. v. Riteway Trucking, Inc., 2016 WL 11602419, *4-5 (N.D. Ind. May 10, 2016) (absent written return receipts, Postal Service tracking information fails to prove service under Indiana Trial Rule 4.1). 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.